# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHNSON SEWER AND DRAIN** | * | |
| **CONTRACTORS, INC.,** *et al.* | * | |
| v. | * | **Civil Action No. CCB-18-1623** |
| **NATIONWIDE PROPERTY AND** | * | |
| **CASUALTY INSURANCE COMPANY** | * | |

## MEMORANDUM

Pending before the court is defendant Nationwide Property and Casualty Insurance Company's ("Nationwide") Motion to Dismiss Complaint, seeking dismissal of both counts of plaintiffs' Johnson Sewer and Drain Contractors, Inc., U.S. Heating & Air, LLC, and Johnson Properties, LLC complaint. On November 28, 2018, the court heard oral argument in this matter. For the reasons stated below, the court will grant the motion.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs (collectively, "Johnson") are affiliated companies owned by the same principal owners whose operations are consolidated for the purposes of insurance coverage. Johnson maintains an insurance policy through Nationwide, including a commercial automobile policy and a workers' compensation policy. The parties have renewed the insurance policy annually since at least 2013. The workers' compensation policy identifies the Michael D. Frankos Agency as Johnson's insurance agent. ECF 9-4 at p. 10. The workers' compensation policy includes a subrogation clause entitled "Recovery From Others" which states "[w]e have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them." ECF 9-4 at p. 18.

On or about April 30, 2013, Robert Stacey, a Johnson employee, was struck from behind by a United States Postal Service ("USPS") truck while driving a Johnson-owned vehicle in

Delaware and acting within the scope of Johnson's business. As a result, Mr. Stacey sustained injuries and the vehicle was damaged. While the extent of Mr. Stacey's injuries is not clear from the record, it appears that Mr. Stacey has undergone spinal surgery as a result of injuries sustained from the accident.

Johnson reported the accident to Mr. Frankos, who initiated claims under the workers' compensation policy and the commercial automobile policy. USPS acknowledged full liability for the accident. Nationwide consequently compensated Johnson pursuant to the insurance policies for the expenses related to both claims. Nationwide, via Mr. Frankos, informed Johnson that it intended to assert its subrogation rights pursuant to the commercial automobile policy against USPS based on USPS's assumption of full liability for the accident. After asserting its subrogation rights for the damages to Johnson's vehicle, Nationwide resolved the automobile claim in 2014 with little to no impact on Johnson's premiums or the commercial automobile policy overall.

In 2014, Johnson requested that Nationwide similarly assert its subrogation rights for the workers' compensation claim, and Mr. Frankos represented to Johnson that Nationwide intended to do so. Between 2014 and April 2015, Johnson repeatedly requested that Nationwide assert its subrogation rights, and Mr. Frankos repeatedly assured Johnson that it would do so.[1] Despite the repeated requests and assurances, Nationwide failed to assert its subrogation rights against USPS regarding the workers' compensation claim by April 30, 2015,[2] and accordingly, the Federal Tort

---

[1] The facts recited in this opinion are drawn from the complaint.

[2] In its complaint and opposition to the motion to dismiss, Johnson argued that the Federal Tort Claims Act imposed a two-year statute of limitations period for Nationwide to pursue its subrogation rights against USPS, resulting in the April 30, 2015 deadline. 28 U.S.C. § 2401. Although Nationwide implicitly acknowledged this position throughout its pleadings, it did not concede that the statute of limitations for it to assert its subrogation rights has run. For the purpose of resolving the motion to dismiss, the court will assume without deciding that the statute of limitations under the FTCA expired on April 30, 2015.

Claims Act's ("FTCA") statute of limitations period expired, precluding Nationwide from seeking compensation from USPS for payments pursuant to the workers' compensation claim. The workers' compensation claim for Mr. Stacey's extensive medical expenses therefore continued to be paid from Johnson's workers' compensation policy without reimbursement from USPS. Beginning in 2014, Johnson's premiums started to rise due to the increase in Johnson's experience rating,[3] which increased at least in part due to Mr. Stacey's ongoing, non-subrogated workers' compensation claim. Additionally, Johnson claimed that it lost business due to commercial customers' unwillingness to contract with Johnson due to Johnson's increasing experience risk rating.

On April 27, 2018, Johnson filed suit against Nationwide, alleging that 1) Nationwide breached its contract with Johnson when it failed to pursue its subrogation rights against USPS, thus violating the implied covenant of good faith and fair dealing; and, in the alternative, 2) pursuant to the doctrine of promissory estoppel, Johnson had relied to its detriment on Mr. Frankos's repeated assurances of Nationwide's intention to pursue its subrogation rights. Nationwide filed its motion to dismiss on June 12, 2018.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir.

---

[3] Both parties have indicated that an experience risk rating is an insurance industry-based calculation that considers the amount of money a company has had to pay in workers' compensation claims. The experience risk rating affects a company's desirability to commercial customers.

3

2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A court may consider a statute of limitations defense on a motion to dismiss only "where the defense is apparent from the face of the complaint." *Wright v. U.S. Postal Service*, 305 F. Supp. 2d 562, 563 (D. Md. 2004).

## ANALYSIS

Nationwide premised its motion to dismiss on three primary arguments. First, Nationwide contended that the state of Maryland has assigned the Maryland Insurance Administration ("MIA") exclusive jurisdiction to resolve the dispute, thereby precluding the court from adjudicating Johnson's claims. Second, Nationwide argued that Johnson filed its complaint after the statute of limitations period for Johnson to file suit had expired. Third, Nationwide asserted that it had not breached its contract with Johnson because no specific contractual provision obligated Nationwide to pursue its subrogation rights, and because the existence of the worker's compensation policy precludes Johnson's claim that the quasi-contractual doctrine of promissory estoppel obligated Nationwide to assert its subrogation rights. While the court does not find all of Nationwide's arguments persuasive,[4] nonetheless it will dismiss both counts of the complaint for the reasons that follow.

---

[4] In particular, Nationwide's argument that the MIA has exclusive jurisdiction over Johnson's claim is belied by the fact that the MIA declined review based on its self-determined lack of jurisdiction. ECF 11-1 at p. 1 (stating "[p]lease note that Nationwide's handling of [Johnson]'s claim or its efforts to seek subrogation do not fall under the jurisdiction of the Insurance Administration"); *see also Whiting-Turner Contracting Co., v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 339–40 (D. Md. 2012) (finding that the Supreme Court's principle that courts should defer to administrative agencies' interpretation of the statutes they administer, as well as Maryland law to the same effect, applied to the MIA) (internal citations omitted).

### i. Breach of contract

Johnson's claim that Nationwide breached the terms of the worker's compensation policy by failing to pursue subrogation against USPS, which allegedly constituted a violation of the implied covenant of good faith and fair dealing, will be dismissed because 1) the parties' agreement did not obligate Nationwide to seek subrogation; 2) the good-faith covenant cannot be used to imply or insert additional obligations into a contract; and 3) Johnson's ability to enjoy the benefits of the workers' compensation policy was not frustrated by Nationwide's failure to seek subrogation. While Johnson claimed that the workers' compensation policy's subrogation clause should be understood to obligate Nationwide to seek subrogation in good faith, the court finds that the subrogation clause instead confirmed the assignment of Johnson's right to seek subrogation to Nationwide and imposed no duty on Nationwide to pursue subrogation.

There are "three categories of subrogation—legal, which arises by operation of law when a third party, who pays another's debt to protect his/her own interests, is deemed entitled to reimbursement[,] conventional, which is provided for by contract[,] and statutory, which, of course, arises from an act of the Legislature." *Rausch v. Allstate Ins. Co.*, 388 Md. 690, 702 (2005). "[A]ssignment of the ... right of recovery [gives] rise to conventional subrogation." *Bachman v. Glazer & Glazer, Inc.*, 316 Md. 405, 413 (1989) (quoting *Security Ins. Co. v. Mangan*, 250 Md. 241, 249 (1968)) (internal quotation marks omitted). Conventional subrogation involves "an agreement, express or implied, between a debtor and a third party or between a creditor and a third party that, upon payment of the debt, the third party will be entitled to all the rights and securities of that debtor or that creditor." *Rausch*, 388 Md. at 702 (quoting *Bachmann*, 316 Md. at 416) (internal quotation marks omitted). Here, Johnson would

have been obligated to pay Mr. Stacey's workers' compensation benefits but for its workers' compensation policy with Nationwide, under which Nationwide assumed this obligation.

Pursuant to the Maryland Workers' Compensation Act (MWCA), self-insured employers and insurers "may bring an action for damages against the third party who is liable for the injury or death of the covered employee." Md. Code Ann., Labor and Employment § 9-902(a) (West 2018). This provision recognizes that, when an employer maintains a workers' compensation insurance policy, it is the insurer rather than the employer who suffers financially upon the filing of a legitimate workers' compensation claim and who thereby is entitled to seek recovery. In keeping with this understanding, the MWCA does not provide a mechanism for an insured employer to seek recovery against a third-party tortfeasor under the guise of subrogation.

The workers' compensation policy's subrogation clause, in keeping with the MWCA's framework, operated as an assignment of Johnson's subrogation rights. The policy stated that Nationwide had Johnson's subrogation rights, and obligated Johnson to do nothing that would interfere with Nationwide's ability to seek subrogation against third parties. Nothing in the subrogation clause indicated Nationwide's intent to obligate itself to seek subrogation.

Further, because the subrogation clause conferred no benefit on Johnson, the implied covenant of good faith and fair dealing cannot be said to have obligated Nationwide to file a claim at Johnson's behest. Maryland law implies the covenant of good faith and fair dealing in every negotiated contract regardless of whether the contract itself explicitly incorporates the covenant. *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182 (4th Cir. 2000); *Clancy v. King*, 405 Md. 541, 565–66 (2008) (internal citations omitted). "[U]nder the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive

6

the fruits of the contract between them." *Eastern Shore*, 213 F.3d at 184 (internal citation omitted). The covenant obligates parties to execute their portions of an agreement in good faith, such that "a promisor who undertakes to exercise judgment on behalf of a promisee impliedly agrees to exercise good judgment" *id.* (citing *Julian v. Christopher*, 320 Md. 1, 8 (1990)), and for "matters of personal discretion in contract, the party with the discretion is limited to exercising that discretion in good faith," *Clancy*, 405 Md. at 569 (internal citations omitted). But the implied covenant "is not understood to interpose new obligations about which the contract is silent ... An implied duty is simply a recognition of conditions inherent in expressed promises." *Eastern Shore*, 213 F.3d at 184.

Here, Nationwide was not obligated by the workers compensation policy's express terms to pursue subrogation, and the implied covenant of good faith and fair dealing cannot serve as the source of an unarticulated obligation to seek subrogation. Further, the subrogation clause did not grant Nationwide the discretion to decide whether to pursue subrogation *on behalf of* Johnson; rather, Johnson assigned its subrogation rights to Nationwide. Nationwide then had the right to exercise its judgment about whether to pursue subrogation to its benefit, and did so when it elected not to file before the expiration of the FTCA's statute of limitations. The decision affected Nationwide's, not Johnson's, ability to recover damages from USPS. Importantly, Nationwide's failure to seek subrogation against USPS has not affected Johnson's ability to enjoy the fruits of the workers' compensation policy or otherwise satisfy the terms of the parties' agreement. To the contrary, both parties appear to agree that Mr. Stacey has received satisfactory payments pursuant to the workers' compensation policy, which is precisely what the parties intended when they entered the agreement.[5]

---

[5] During the November 28 hearing, Johnson referred the court to its previous opinion in *Holland v. Psych. Assessment Res., Inc.* in support of its claim that the implied covenant of good faith and fair dealing

7

### ii. Promissory estoppel

Johnson's promissory estoppel claim relies on the presumption that, had Nationwide been forthright about its lack of intent to seek subrogation against USPS, Johnson could have sought subrogation on its own accord prior to the expiration of the FTCA's statute of limitations and thus could have avoided the increases in its premiums and experience risk rating. Johnson acknowledged in its complaint, however, that it had no basis for a subrogation claim against USPS, stating that "Johnson had no right to pursue USPS directly for reimbursement of payments to [Mr. Stacey] on the Employee's Workers' Comp Claim but instead Johnson had to rely upon [sic] Nationwide to assert its subrogation rights to recoup from USPS the payments that Nationwide made to [Mr. Stacey]." ECF 2 at ¶ 22. During oral argument, Johnson's counsel suggested that, had it known that Nationwide did not intend to seek subrogation against USPS, Johnson would have brought its own subrogation claim against USPS and would have been permitted to do so under Delaware law. To date, Johnson has not sought leave of the court to amend its complaint, and "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) (internal citations omitted). Furthermore, "statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) (internal citations omitted). Johnson's promissory estoppel claim could be dismissed on this basis, as Johnson itself has conceded that it

---

requires discretion be exercised reasonably. Civ. No. CCB-04-437, 2004 WL 1368873 at *4 (D. Md. June 16, 2004). *Holland* relied heavily on the *Eastern Shore* ruling in discussing the interplay between a party's obligation to exercise discretion in good faith and the covenant's limited application to only express contractual obligations. *Id.* It is not inconsistent with this case, where the discretion relates to Nationwide's right of subrogation, not Johnson's.

was not estopped from filing suit, but rather was not entitled to seek subrogated damages from USPS.

Setting aside the plain language of the complaint, however, the promissory estoppel claim still should be dismissed because Johnson was correct that it had no statutory basis to seek subrogation against USPS in either Maryland or Delaware. While the MWCA, Labor and Employment § 9-902, permits subrogation of workers' compensation claims, the law "allows <u>a self-insured employer or an insurer</u> to sue a third party tortfeasor to recover compensation benefits paid on behalf of a claimant," *Chaney Enter. Ltd. P'ship v. Windsor, Jr.*, 158 Md. App. 1, 23 (2004) (emphasis added). The *Chaney* court noted that the MWCA grants self-insured employers and insurers a two-month exclusive right to sue third party tortfeasors "in order to recoup from the tort-feasor the compensation it has paid." *Id.* at 18 (internal citations and quotation marks omitted). Upon the expiration of the two-month exclusivity period, injured employees may file suit against the third-party tortfeasor, in which case "the employer retains a subrogation interest in the reimbursement of the workers' compensation funds it paid" pursuant to the MWCA "because the employer's interest acts as a statutory lien on any recovery the employee may obtain from the third party." *Id.* at 19 (internal citations and quotation marks omitted); *see also Saadeh v. Saadeh, Inc.*, 150 Md. App. 305, 313–14 (2003) ("whether the third-party action is brought by the insurer or the employee, the insurer is entitled to recoup from the tort-feasor the compensation it has paid"). Johnson would not have been entitled to sue USPS under the MWCA, or to receive reimbursement of any damages Mr. Stacey hypothetically may have received from USPS, because Nationwide, not Johnson, paid Mr. Stacey's workers' compensation benefits. Johnson had no financial stake in any tort claim against USPS. There simply was nothing for Johnson to recoup.

9

The same is true if Johnson had sought damages against USPS in Delaware pursuant to the Delaware Workers' Compensation Act (DWCA), Del. Code Ann. tit. 19, § 2363(a) (West 2018), as Johnson claimed during the November 28 hearing it would have done had it received notice that Nationwide would not sue. The DWCA similarly permits an employer or insurance carrier to enforce the liability of a third party for damages after the expiration of an employee's exclusive right to do so, *id.*, or to seek reimbursement of an employee's recovery from a third-party tortfeasor, *id.* at § 2363(e); *see also Roadway Express v. Folk*, 817 A.2d 772, 774 (Del. 2003) (the DWCA "affords an employer, or the employer's insurance company, the right to seek reimbursement for workers' compensation benefits paid to an employee injured by a third-party tortfeasor"). Johnson had not paid any of Mr. Stacey's workers' compensation benefits, and thus, as with the MWCA, was not entitled under the DWCA to a reimbursement of funds it did not expend. Furthermore, even if Johnson had managed to articulate a financial stake in a subrogation case against USPS in Delaware, the DWCA only applies to instances for which the injury is compensable under the DWCA. *Id.* at § 2363(a). Mr. Stacey's workers' compensation benefits were paid by Nationwide pursuant to the MWCA, not the DWCA, and therefore, the DWCA would not have provided a statutory mechanism for Johnson to have pursued a subrogation claim against USPS.

## CONCLUSION

For the reasons stated above, the court will grant Nationwide's motion to dismiss the complaint. A separate order follows.

12/21/18
Date

Catherine C. Blake
United States District Judge

10